[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR DEFICIENCY JUDGMENT (#128)
I. FACTUAL AND PROCEDURAL BACKGROUND
In a complaint with a return date of October 3, 1995, the plaintiff brought action against five defendants: Pace Investment Associates; Mac-Gray Company, Inc.; Centerbank of Waterbury, Successor to Central Bank; Richard Whitehouse; and Gianfranco Galluzzo to foreclose a note and mortgage dated July 8, 1985 secured by real estate (12 Willard Street, Hartford) and a security interest in certain personalty.
Defendants Mac-Gray Company, Inc. and Centerbank of Waterbury were both defaulted for failure to appear on October 24, 1995. The defendant Gianfranco Galluzzo stipulated to a judgment of strict foreclosure against him by motion filed February 5, 1996. The defendants, Pace Investment Associates and Richard Whitehouse (a general partner in Pace), also stipulated to a judgment of strict foreclosure by motion filed February 5, 1996.
A judgment of strict foreclosure was entered by the court (Arena, J.) on February 20, 1996. The first law day was set for March 20, 1996. Title vested on March 26, 1996. At the time of judgment the debt was found to be $988,050.76. At the time of judgment the court found the fair market value of the realty to be $750,000.00. CT Page 5860
By motion filed April 3, 1996, plaintiff now seeks a deficiency judgment. Pursuant to § 49-14 of the General Statutes, the court held a hearing on this issue on July 26, 1996. The plaintiff and the defendants, Pace and Richard Whitehouse, appeared and were represented by counsel.
During the course of the hearing, the plaintiff called Edward F. Heberger, a real estate appraiser, as its only witness during its case in chief. The defendants called as witnesses Michael Stone, an associate of Heberger's who worked on the appraisal of the Willard Street property; Richard Whitehouse, a general partner in Pace; and Peter Marsele, a real estate appraiser. In rebuttal the plaintiff called Miguel Cruz, the maintenance manager of the Willard Street property since November of 1995.
At the conclusion of evidence, all parties who were present had an opportunity to make argument before the court. Plaintiff seeks to have the court adopt its expert's valuation of the property at $750,000.00. (Exhibit, Plaintiff's 1 and 2). The defendants wish to have the court adopt their expert's valuation of the property at $1,844,000.00. (Exhibit, Defendant's A).
II. DISCUSSION
Section 49-14 of the Connecticut General Statutes is specific as to the procedure to be followed for purposes of a deficiency judgment. Subsection (a) of the statute states:
 At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. . . At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim.
In this case, title vested in the plaintiff on March 26, 1996. Plaintiff filed its motion for deficiency judgment CT Page 5861 on April 3, 1996, well within the thirty day time period mandated in the statute. All that then remains for this court to establish is a valuation for the mortgaged property, and if less than the debt, to establish a deficiency judgment based on the court's valuation.[1]
The court finds the following. The 12 Willard Street property in Hartford is a multi-family residence built in 1969, consisting of 61 apartments: 3 efficiency units, 57 one-bedroom units, and 1 two-bedroom unit. The gross building area is 29,470 square feet, situated on a parcel approximately 6/10ths of an acre in size. (Exhibit, Plaintiff's 1).
Plaintiff's expert's appraisal included a comparison of apartment sales in the city of Hartford in 1988-1989 to apartment sales in 1992 through the present. That information shows that between 1988 and 1989, the average sales price was approximately $39,000.00 per unit. Between 1992 and the present, the average sales price per unit was $15,179.00, a 61.27% decrease in the market. (Exhibit, Plaintiff's 1 at pp. 10-14).
Plaintiff's appraiser's report consisted of both the sales comparison approach and the income capitalization approach. Six sales were presented for comparison by Mr. Heberger, five of which involved sales after the respective property had been foreclosed. All six properties were located in similar neighborhoods to the subject property and all sales were completed between March, 1994, and June, 1995. Mr. Heberger's fair market value of the property based on the sales comparison approach was $750,000.00 which computes to an average of $12,500.00 per unit (based on 61 units). Unadjusted unit price per unit of the six comparable sales ranged from $8,163.00 to $15,909.00 per unit with an average price per unit of $13,258.00. Once upward and downward adjustments were made on each of these comparables, an average unit price of $12,500.00 would not be unreasonable.
Under the income capitalization approach, which included an analysis of market rental and expense data, seven comparable market rentals were used. Five of the seven comparables were built in the same time period as the subject property, two were built in the early 1900's with one of those two having an addition in 1967. The number of units in each of the comparables ranged from a low of 18 to a high of 147 units. All comparables were located in the city of Hartford. The capitalization CT Page 5862 rate estimated through the band of investment analysis is 12.3% the rate estimated through comparative analysis is 12.0 to 13.0%. Mr. Heberger's fair market value of the property based on the income capitalization approach is $745,000.00 using a capitalization rate of 12.5%.
Based on plaintiff's expert's two methodologies, Mr. Herberger [Heberger] found fair market value of the subject property to be $750,000.00.
Defendants' expert appraiser, Peter Marsele, determined his value of the property by using an income approach on the subject property. No comparables were used. No other valuation approaches were used. Mr. Marsele used a 10.80% capitalization rate based on the band of investment approach. In reviewing expenses, Mr. Marsele used an incorrect tax figure, decreased by over $10,000.00. Mr. Marseles' opinion as to the fair market value of the subject property was $1,844,000.00. (Exhibit, Defendants' A). The number he used ($170,730.00) was capitalized at 10.8%. At trial Mr. Marsele corrected his value, recalculated it, and testified that the correct number and value was $1,580,000.00. This reduced his price per unit from $30,000.00 to $25,900.00.
This court finds the appraisal report of plaintiff's expert Heberger to be far more comprehensive and far more persuasive that the appraisal of defendants' expert Marsele. The court finds defendant Whitehouse's testimony about the conditions of some of the properties which Heberger used as comparables while sincere, still self-serving. The court found more credible the testimony of the current on-site maintenance person, Miguel Cruz, who informed the court of the poor condition of various units in the subject property at the commencement of his involvement in November, 1995.
This court is not unaware that when viewing comparable sales, it is best to use properties which have not been subject to foreclosures or other proceedings which may affect the respective property's value. However, based on the current real estate market and the fact that these comparables are located in a large city, the fact that the majority of comparables were foreclosed properties does not persuade the court that they should not have been used.
III. CONCLUSION
CT Page 5863
Accordingly, this court adopts plaintiff's expert's conclusion as to the fair market value of the property at $750,000.00 as of the date of vesting. This is clearly the more realistic of the two competing values presented to this court and the value which is more comprehensively documented and therefore, more credible.
Finally, plaintiff requested $6,675.00 for an appraisal fee and $7,915.85 for attorney's fees. This court has reviewed the appraisal and supplemental appraisal. This court has also reviewed plaintiff's counsel's affidavit of attorney's fees. This court awards $5,000.00 for an appraisal fee and $5,000.00 for attorney's fees, both awards being substantially higher than this court's usual awards in foreclosure matters.
Based on these conclusions, this court makes the following deficiency calculation:
(a) Findings on Date of Judgment
 Debt (includes interest) $ 988,050.76 Appraisal Fee deferred Attorney's Fees deferred Title Fee 150.00
Total $ 988,200.76
(b) Findings from Deficiency Hearing (as of vesting 3/26/96)
 Interest from judgement $ 9,767.13 (to 3/26/96 at contract rate of 11/52%)
 Default Interest $ 10,699.82 (1% from default, 3/26/96)
 Late Charges $ 3,699.82 (through acceleration) ($458 x 8 months)
 Taxes and Insurance $ 38,138.63 (paid by plaintiff)
CT Page 5864
 Interest on Taxes and $ 1,873.80 Insurance
(c) Total Due Plaintiff at Vesting $1,052,379.90
(d) Less Value of Property at Vesting $ (750,000.00)
(e) Less Amounts Received from Receiver $ (23,764.15)
(f) Deficiency as of Vesting $ 278,615.75
(g) Plus Statutory Interest $ 9,439.14 (from 3/26/96 to 7/26/96, 122 days at $77.37 per day)
(h) Appraisal Fee $ 5,000.00
(i) Attorney's Fees $ 5,000.00
(j) Deficiency Judgment Amount $ 298,054.89
SUSAN B. HANDY JUDGE, SUPERIOR COURT